This case is number 06-3227, Warren Wilson v. Office of Personnel Management. Mr. Smith. Good afternoon, Your Honors. I'm J. Arthur Smith III. I'm from Vancouver, Louisiana. And I feel very honored to appear before this court for the first time. Mr. Wilson. Welcome. This case very briefly involves a disability retirement application by a former city letter carrier from the civil service retirement system. His application was denied initially due to agency procedures and went to a hearing before the American Patent System's administrative law judge. And the administrative law judge had a full hearing and rendered a decision after that hearing. You might have sent him a note, but he's right in the background, so he'll come directly to you, Your Honor. Thank you very much. What I want to focus on are basically two things. I want to focus on the question of the burden of proof and the burden of production in this case. The government takes the position that, in all respects, Mr. Wilson had the burden of proof. While we don't disagree that Mr. Wilson had the ultimate burden of proof, we think the issue is really more refined than that. And the refinements come in in terms of looking at which party had the burden of production on the issues that are particular to this case. Now, I start out by looking at the regulation that deals with the accommodation issue, and that's ACFR 831.123. That regulation states the employing agency must be unable to accommodate the disabled in medical condition in the position held or in an existing vacant position. And that's the test, as I see it. Now, in this court's case of Bruner v. OPM 996-57-290, this court noted that neither the statute nor the regulation allocates the burden of proof. And Bruner engaged in the type of analysis that I think is appropriate in this case to talk about the refinements of the burden of proof in terms of the burden of persuasion and the burden of production. The situation that we have here is basically where the employing agency has the unique ability and control with regard to the making of accommodations and with regard to their inability to make accommodations. This is information that's uniquely within the knowledge and control of the employing agency, and it's not uniquely within the knowledge and control of Mr. Wilson. So this case law that I have taken a look at, and I have some additional citations for you on this, suggests to me strongly that the burden of production on the issue of accommodations lies with the government. Now, I have a couple of Supreme Court cases that I wanted to just— Mr. Smith, if I could ask you one question. We received this morning, just before court, some pages of the transcript, hearing transcript, under cover of a letter from you. And this clearly is part of the record of the case, but was there anything in there that you were particularly directing our attention to? It didn't say in the letter, it just said, here are pages of transcript, the testimony of Mr. Wilson's doctor. What in particular did you have in mind for this? There's a discussion in Dr. Jeffries' testimony, he's a primary care physician. Which page of the testimony? I don't think it's numbered. I don't think the court reported a number. Oh, no, there are numbers. Oh, there are numbers? Yeah, at least the copies we have. Okay. I just wanted to get a sense of what the purpose of this was. And I appreciate that, but let me see if I can find— So we can know what to really focus on. Find the number. Basically, what I'm referring to is the testimony of—my copy does not have a number, but it's— At the top of the page, there are numbers from the transcript. Well, I think I have an email version, but it's—it's 1, 2, 3, 4, 5, 6, 7, 8, 9. It's the ninth page, starting with line 3. What does it say? It starts off saying, I think he's disabled from working in the public service. Okay, that's page 9, line 4 in our book. And that's one of the points I wanted to demonstrate to the court, is that the treating physician says that Mr. Wilson is disabled from any job at the Postal Service. And this is because what he—they diagnosed him to be a severe anxiety disorder that's caused him to have panic attacks and all those kinds of things, that he just, for some reason, has this fixation, which I'm sure is very unhealthy, that he's been victimized by the Postal Service. And going back there would just exacerbate his symptoms as it's done historically. We went over in the latter part of the transcript, which Judge Farseh asked Dr. Jeffries about, did these emotional conditions have physiological reactions? And he explained how they get in terms of his headaches and his jaunts and that. This was the testimony before the Marriage Systems Protection Board. Yeah, this was the testimony. And as you know, we have no authority to review the merits of disability. And so you're pointing out to us that there was testimony that could not be accommodated in any way. What I'm pointing out to you is that there is testimony that shows the Postal Service acknowledged and certified that he could not be accommodated. And that's all the evidence in the record on the direct issue of accommodation. That was the document that you—I guess it's in the appendix, right? Right. And I have referenced Dr. Jeffries' testimony in my brief. I just wanted the court to see it because it shows why he can't be accommodated. And the reason he can't be accommodated is he's totally disabled from any work at the Postal Service. The obligation of accommodation goes to work within the Postal Service. It's that position or another vacant position within the Postal Service. And if the man is totally disabled, there's no way that accommodation even comes into play. But your argument before us is that the burden is on the Postal Service. The burden of production is on the Postal Service. Counsel, was that in your brief? I don't believe it was, but there was— I don't see it as a burden. It's a different argument for a reason. Well, there was a lot of discussion in the government's brief about burden of proof and what is the effect of all this. And so I don't know that I mentioned burden of production, but I think it's inherent in the issues before the court. And I think there is part of the body of law that deals with this appeal. And, I mean, there are other cases that the U.S. Supreme Court—I like to point out to the court— United States versus New York, New Haven, and Hartford Railroad Company at page 256 and note 5. What's the site? It's 355 U.S. 253. United States, New York, New Haven, and Hartford Railroad Company. And the Supreme Court said, and I quote, The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts. He would agree within the knowledge of his adversary. And going on— Well, the thing is that here we're dealing with a particular statutory regulatory scheme and a particular adjudicative body, the American Citizens Protection Board, and the law of this court. And the law has developed in that setting that is directly applicable. And I haven't seen this, read this case. I'm sure you're actively holding it. But I think what you really have to focus on is the law relating to establishing disability with respect to a civilian employee. Right. Well, we have disability established. There's no question about disability. Mr. Trelawney, I appreciate your very fine opinion, saying you were disabled. The only reason is— It's the accommodation issue. It's the accommodation issue. And what I say is that you have to look at all this in context, and I don't want to get down to the heart of it, but I think you have to look at these refinements of the proof here and what the absence of proof, what that means from a legal standpoint. And I just want to quote you one more case, the Concrete Pipes and Products of California, Inc., versus Construction Laborers Pension Trust of Southern California, 508 U.S. 608. And the Supreme Court says, It is indeed entirely sensible to burden the party more likely to have information relevant to the facts about its withdrawal from the plan with the obligation to demonstrate that the facts created by the plan as a matter of withdrawal did not occur as alleged. In every case, the onus pro bono, which is burden of proof in life, apparently, on the party who wishes to support its case about a particular fact, which lies more peculiarly within his knowledge than what he is supposed to, quote, Now, with that background, we get to the Brunner case. The Brunner case basically says the same thing. And in this case, as very similar to Brunner, the employing agency admitted that it could not accommodate Mr. Wilson. Is that case cited? I think the Brunner case was cited by the... Which one is that? I was just looking for that. Okay, it's 996 Fed 729. 996? 996 Fed 729. And in our case, the employing agency admitted it could not accommodate Mr. Wilson because his primary care physician said that he couldn't return to work. You can't accommodate somebody if they can't return to work, if they're totally disabled from working in the post office. And that's why that representation, that admission, that certification by the Postal Service is entirely correct. Now, going back to Brunner and following up on the Brunner analysis a little bit, I would respectfully submit to you that this admission by the Postal Service has two effects. Number one, the admission is presumptively correct. Any decision or the like from a government agency is presumptively correct. Mr. Smith, one thing I think the government points out is that you may be reading more into this or perhaps reading it out of context. I mean, it appears, I guess it's on page six of the corrected appendix, and it says none because the employee's physician is not cleared him to return to work. And that's not a flat-out statement. It's no accommodations possible in saying basically, look, we don't. At this point, no, because he hasn't been allowed to come back to work. Well, he's not allowed to come back to work because he's been disabled for a long period of time and the doctor says he cannot come back to work at the Postal Service. But there was a statement. I thought the doctor submitted a statement saying he couldn't come back for at least 90 days. That was one of the doctors, one of many, who evaluated him to corroborate Dr. Jeffrey's analysis. It was Dr. Sinek. Dr. Sinek, he was a psychiatrist. He didn't say he could come back. He said he might not come back in 90 days. That didn't pan out. And with the evidence that Dr. Took on, it was submitted to the judge, it was referred to the judge's reasons for judgment. The analysis of all the other doctors is he couldn't come back to work and has been out for a prolonged period of time, and it's not been approved. Now, that's just not a situation where any accommodation would be as practical or realistic. Let me go back to Bruner. Bruner says— Well, let me go on a little bit further and say this. Bruner says if there's certain aspects of the case in which one party may have more superior knowledge than the other, and they refer to the availability of the position, the accommodation issue specifically. It also says that where the government does not meet its burden of production, normally the applicant would actually win. In this case, the government made this certification. It was part of the record. It was never withdrawn. It is consistent with the medical testimony. And as in Bruner, the government did not introduce sufficient evidence to support a finding in its favor on the accommodation issue. There's simply no evidence other than their certification on the accommodation issue. So whether you go into the Bruner analysis or just look at the admission, there's no evidence that the government submitted to support a finding in its favor on this issue. And this decision below should be reversed. Okay. Thank you, Mr. Smith. Thank you. Good morning. May I please the Court? This Court should affirm the decision of the Merit Systems Protection Board affirming OCAM's decision to deny Mr. Wilson's application. Would you refresh me as to what positions were offered in accommodation? I'm sorry, could you repeat the question? Would you remind me or tell me, we're not looking into the fact of the initial disability, but would you summarize what positions were offered to Mr. Wilson to accommodate his disability? Well, the agency hasn't had the opportunity to try to accommodate Mr. Wilson because he has not returned to work. If he had returned to work or had committed to talk with us- But to return to work, you're saying he had to return to work in the initial position which caused his disability, which we're telling causes disability? No, Your Honor. That's not what we mean by return to work. What we mean by return to work is to come in and sit with the agency and try to find ways to accommodate his disability. For example, in the initial decision, one of the things the administrative judge brings up is that Mr. Wilson's disability, there were two things that were brought up. One, problems with asthma. Two, problems with anxiety. And in the initial decision, the administrative judge recommends that perhaps he could do the position he has now, but maybe with a dust mask that would help with the allergy symptoms. Or perhaps he could be moved to another position where it was less strenuous or less stressful to him. In any event, the agency cannot- has no opportunity to try to accommodate Mr. Wilson's disability until he physically comes back into work or at least enters into some kind of discussion with the agency to try to find ways that may accommodate some of the problems that he is having in the position that he occupies now. All right. So when his physicians say he can't come back to work, where does that leave him? Well, if you look at the evidence in this case, his primary doctor, Mr. Jeffries, the testimony that you have that was submitted this morning, does state that he thinks he's disabled to work for the Postal Service. But if you look further in his testimony, Dr. Jeffries talks about how he's not the one that is treating the anxiety disorder. That's being treated by his psychiatrist, who testified that in treating him that he might be able to return to work in 90 days. And the MSPB has the exclusive jurisdiction to take those factual determinations and use those to determine whether or not Mr. Wilson is entitled to disability retirement. As this court had brought up earlier, any review of the factual determinations is barred, and this court's jurisdiction is limited to reviewing legal or procedural challenges, none of which has been raised by the appellant in this case. If I could just address the Bruner case, because it was brought up for the first time on appeal today at argument, the Bruner case is not cited in the appellant's brief, nor is it cited in our brief, simply because— That's correct, Your Honor. It is a law of the court, and it is an opinion that you wrote. The reason why it's not cited in our briefs is because the issue, the challenge, the burden of proof was never raised in their briefs. In fact, when Mr. Wilson's attorney started his argument today, he stated that they do not dispute that the burden is upon Mr. Wilson to show that the agency could not accommodate him. Nevertheless, the Bruner case stands for the position that the burden of protection will only be shifted to the government if the employee is fired for disability. In this case, Mr. Wilson was not fired. The agency would welcome him to return so that they could try to accommodate his disability and see if they could find another position in which he could work and not suffer from the asthma or the anxiety and stress that he complains of. So you're saying Bruner is not applicable. It's a case of our court that's not applicable in this case. Exactly, Your Honor. It's not applicable in this case. Is this—did you bring up something? Keneally? It's Keneally, correct. Keneally. Okay. We'll make sure I got that right. Mr. Keneally, the Lindahl—and I guess in our court to say Anthony is the case—stands for the proposition that we can't review, as you indicated, and I think Mr. Smith understands, the factual determinations relating to a disability determination. That certainly goes to medical issues. Does someone have a heart condition? Do they have an anxiety or depression condition or whatever? But does that also relate to issues such as the question of accommodation? Yes. Your Honor, I tried to find a case that focused on it. In that context, I wasn't able to find one. Do you know of one? I'm not saying you're right or wrong. I'm just saying, do you know of a case that would specifically say that the Lindahl-Anthony, etc. rule applies not only to the physical issue of the individual but also to the question of accommodation? I cannot stand here and cite a case to Your Honor, but it's something that, if you'd like, I could submit supplemental reading on. But honestly, I don't think you need to look past the language of the statute in answering that question. I think that the Court has concluded from looking at factual determinations in general regarding disability retirement beyond just medical evidence. Because if you look at the language of the statute, and I'm referring to Title V, United States Code, Section 8337, it states that any employee shall be considered to be disabled only if the employee is, quote, found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service, and is not qualified for reassignment under procedures prescribed by the office to a date and position. And I think that the plain language of the statute, which is also examined in Lindahl, shows that the factual determination of whether or not Mr. Wilson is disabled and whether the agency can accommodate him is something that is not reviewable by this Court. So you're saying, based on the language of the statute, Lindahl would reach not only the question of the individual's physical condition but the issue of accommodation? That's what our argument would be. But what he's not asking us to find these facts. He's saying the burden is on the government or on the Postal Service to offer accommodation, not was their offer adequate. Should it have been accepted? Should it have been rejected? But where does the burden of taking the next step reside? And that's an important question, isn't it? And the burden here resides upon Mr. Wilson to show that the agency cannot accommodate his disability. How this would work out is... Or to put it the other way around, even if the ultimate burden of proof is on the petitioner, where is the burden going forward on the issue of accommodation when it's the Postal Service who needs to say, we offer you this position out of the way, out of stress, out of concern. With all due respect, Your Honor, I would disagree with that because of a number of things. One, this is not a case where the agency has admitted that they couldn't accommodate Mr. Wilson, one. And two, this is not a case where Mr. Wilson suffers from some kind of a physical disability where it's pretty impossible that he could do any job at the Postal Service. The disability that's appendix to Mr. Wilson's case, problems with asthma, problems with anxiety, those are disabilities that it would be difficult for the agency to determine what other positions could accommodate him until he comes back to work and tries those positions and then is re-evaluated. It doesn't affect who has the burden, does it? The fact that a burden is difficult to meet doesn't change where the burden is placed. In fact, it makes it even more important to know where the burden is placed if it's going to be a difficult burden to meet. You're right. If it's a difficult burden to meet, it doesn't change the burden. And therefore, the argument that Mr. Wilson's attorney was making, the fact that the burden should be shifted because somehow we would disagree that they don't have the evidence to show that, or the evidence doesn't rely or doesn't exist in their hands to show that he can be accommodated, that doesn't shift their burden. Under the law, the burden is for them to show that the agency cannot accommodate Mr. Wilson's position. And that doesn't shift unless, under the Bruner case, he was fired for his disability and he wasn't in this case. And your argument, Ms. Keneally, as I understand it, is keeping that aside. Mr. Wilson never raised the burden of proof issue in this court. That's correct, Your Honor. And he's raising it for the first time on appeal. It's in the statute. It's difficult to know at which point the law needs to be argued and at which point one can argue the law at what stage in the proceedings. But this is what's troubling, is here he has his physician say, you can't go back to work. Or they argue, perhaps, let's say this is so clear as to what they say. So he says, my physician says, I can't go back to work. Therefore, let me retire, let me have an annuity, since I can't go back to work. And there's no contrary evidence from the Postal Service or OPM or the MSPB or anyone else saying, yes, you can go back to work, we have positions, positions that you might be able to fill. We don't know if you can fill them or not, because we haven't offered them to you. And so all we have is the evidence on his side. Now, and I don't see the issue being raised as that that evidence is insufficient. Now, I'm inclined to agree that the question of the sufficiency of the evidence of disability is not within our purview. But when there is no contrary evidence offered, do we then say, well, this is prime efficient, because his physicians say he can't go back to work? Or were there gaps in the proceedings up to now? Because these are very complicated. Well, I mean, they sound simple, but I think we've all seen that they aren't simple. Maybe he needs another shot at trying to comply with the rules. There's something here that's troubling. Well, his physician, the physician that they were locked on, there is a physician that they were locked on that he could not return to work in his position as a city letter carrier, but there isn't any medical evidence that he can't even return to the building at all. The bottom line is that the burden rests upon Mr. Wilson to show that the agency could not accommodate him. There is no evidence. He did not meet that burden because there is no evidence that, one, the agency refused to accommodate him, or the agency admitted that they could not accommodate him, or any other evidence to show the agency could not accommodate him. The gap is that if he had said, I'm willing to come back if you would accommodate me, would change everything? It would be different if he had come back to work and he had... As a letter carrier? Not as a letter carrier, but physically. What? He turns up and says, here I am? Perhaps, I can't answer that question. There are many positions within the Postal Service they could have tried him out with, but what he could have done was simply come to the office just one day, one morning. There's not even evidence that he called or wrote a letter or returned calls or anything of the sort, but the agency should be allowed the opportunity to try to accommodate his disability. That is one of the factors that he needs to establish to get disability retirement. He has to be able to show that the agency cannot accommodate him, and in this case, the agency wasn't even given the opportunity, hadn't even started efforts, to try to accommodate him in another position, either in a building that was less comfortable or less stressful. Maybe we don't know. It doesn't... Exactly, Your Honor. It doesn't sound as if that's something that was explored. Exactly. We don't know because the efforts had not been made yet. It's not as the appellant is alleging that there was a judicial admission. First of all, the supervisor's statement, one, is not a judicial admission, and even if it was a judicial admission, they do not admit in there that they could not accommodate the appellant. What they state in there is that no accommodation efforts had been made yet because he hadn't returned to work for the agency to try to accommodate him. The agency needs the opportunity to promise to Wilson different positions to see if his disability could be accommodated. Earlier, Counsel, you pointed out he's not been fired, right? So if we were to affirm the proceeding below, he still has an opportunity to contact the agency at this point, let them know exactly what his limited abilities or disabilities are, and the agency still will make attempts to accommodate him, or at that point will say, no, I'm sorry, under these medical conditions, we're unable to accommodate you. I believe that's correct, Your Honor, and so give me just one moment to just confer because I don't want to give any wrong information to the agency, Counsel. He has not been discharged. That's correct, Your Honor, he has not been discharged, and he would have that opportunity. Okay, thank you. But if this is affirmed, it's all over for him, is it not? Or is that still available? I think, Your Honor, if this case is affirmed, all it does is affirm OPM's denial of disability retirement. He would get disability retirement. The record provided or that he doesn't get disability retirement go away. I think it would be he wouldn't get disability retirement on the record, if I'm understanding the question correctly. My understanding is he can go back to his place of employment, explain his disabilities, and then the issue of accommodation could be flushed out, and if he can't be accommodated, he'd get to then at that point come forward again with a disability. That's my understanding, Your Honor. If he came back to work and they tried him out in different positions, continued to say, no, he's still suffering from this, he's still suffering from this, I think there would be the evidence that's lacking here that the agency wasn't able to accommodate him. But we don't have that here because he hasn't returned to work, and that's what makes the situation different here. Any more questions for Mr. Bruner? Mr. Smith. Yes. I would like to quote this language from Bruner. The initial presumption in favor of the claimant will result only in cases where the government does not introduce sufficient evidence to support a finding in its favor. In such cases, an applicant who is dismissed for physical disqualification and absence of an alternative position will generally rebate. Now, I believe that's what we have here. We have the evidence. It's uncontradicted. The government did not present any evidence to offer us the support finding. I'm just trying to make sure I understand. The way I understood this case, if you agree, was that you acknowledged that you had burden proof, correct? And I still do. Yeah. And you argued that you met that burden of proof because you had in your favor a judicial admission, correct? Mm-hmm. Now, if one accepts that there was a judicial admission, assuming we can address this issue in line with what Judge Newman was discussing earlier, but assuming we can address this issue, if this was a judicial admission, you would win. Is that your view? In the absence of withdrawal or conciliation. Now, if it's not a judicial admission, do you lose? No. Because then there's no evidence. I think you can characterize that as evidence that the only evidence that the government submitted, whether it's judicial admission, gesticulation, or however you technically characterize it, that is the only evidence that the government submitted. It is not controverted. And I think that the evidence, on the bruner, if the government does not introduce evidence sufficient to support lying in its favor, the outcome wins. And that's the rule of this case. But what about Ms. Keneally distinguished that as a discharge case? Well, I think it's a difference without a distinction. I mean, this is the rationale of how these cases should be decided. This is this court's interpretation of the statutory scheme. And yeah, you can distinguish any case in the world, but the rationale is here. And it's fair. I mean, it's just plain justice. And I'd like to also say that Mr. Wilson has done everything he's been asked to do. And I can say, well, I don't want to go beyond the record, but he's been asked everything. He's done everything he's been asked to do. There's nothing in the record to the contrary. And I know I'm out of time, but I wanted to, if I could, answer one question that your Honor had. It's about the statute in the scope of the rulebook review. It's referred to in the case of this court in Snyder v. OPM. It's an unpublished decision, but it's what? 2003 West Law, 216-504-55. And it basically talks about the statute. The statute says that questions of disability and dependency are all of the matters that are defined and are not subject to review by the courts. And the question is, are there other questions other than disability? What is that case again? It's 2003 West Law. If you could give me slowly the number. 216-594-55. And then the Lindahl case has some discussions of that too. And the Lindahl case is, I'm sure you've read it. It's somewhat involved. It seems to me that they're talking about decisions that are not reviewable, being the decisions where the court is called upon to determine whether the medical evidence supports the disability. And other matters that are collateral to the disability question may be subject to a different state of review. Thank you all very, very much. Thank you, Mr. Smith. Thank you, Ms. Haley. We're adjourned.